IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| SANTOS A. RANGEL, and ANTHONY ROMANO, individually and on behalf of a class of those similarly situated, | ) ) ) |
| | ) Case No.: 17-cv-50244 |
| Plaintiffs, | ) ) Hon. Judge: |
| | ) Mag Judge: |
| HEARTLAND HEALTHCARE FUND, Trustees of the Heartland Healthcare Fund, BRUCE WERNING, DAVID FOY, DAVID ARGUBRIGHT, STEVEN TONDI, GREG MULHERIN, and DANIEL F. AUSSEM, | ) ) ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT

Plaintiffs, by their attorneys, Rathje & Woodward, LLC, complain of Defendants HEARTLAND HEALTHCARE FUND ("Fund"), BRUCE WERNING, DAVID FOY, DAVID ARGUBRIGHT, STEVEN TONDI, GREG MULHERIN and DANIEL F. AUSSEM (hereinafter collectively as "Trustees"), as follows:

### Nature of the Action

1. Plaintiffs, Santos A. Rangel and Anthony Romano, as participants in the Fund as defined under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001 *et seq.*, and acting for themselves and on behalf of all other similarly situated, bring this action against Defendants to redress fiduciary violations in which Defendants participated as ERISA fiduciaries in violation of the Trust Agreement and ERISA.

### Jurisdiction, Standing and Venue

2. This Court has jurisdiction pursuant to ERISA §§ 502(e)(1) and 502(f), 29 U.S.C. § 1132(e)(1) and 132(f).

1

3. Plaintiffs are empowered to bring this action as participants pursuant to ERISA §§ 502(a)(1)(B), 502(a)(2) and 502(a)(3), 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(2) and 1132(a)(3).

4. Venue is based on 28 U.S.C. § 1391(b)(2) and ERISA §502(e)(2), 29 U.S.C. §1132(e)(2).

**Parties**

5. Plaintiff, Santos A. Rangel, is a resident of Whiteside County, and is a participant in the Heartland Healthcare Fund. Mr. Rangel is a member of Carpenters Local 790 based on Rock Falls, Whiteside County, IL, and is an Employee of Raynor Garage Doors in Dixon, Lee County, IL.

6. Plaintiff, Anthony Romano, is a resident of Whiteside County, and is a participant in the Heartland Healthcare Fund. Mr. Romano is a member of Carpenters Local 790 based on Rock Falls, Whiteside County, IL, and is an Employee of Raynor Garage Doors in Dixon, Lee County, IL.

7. Defendant, Heartland Healthcare Fund ("Fund"), is a multi-employer welfare fund that receives contributions pursuant to collective bargaining agreements ("CBAs") negotiated by the Chicago Regional Council of Carpenters f/n/a Heartland Regional Council of Carpenters ("Union") with various individual employers and employer associations.

8. Defendant, Bruce Werning, is the Director of the Western Region of the Chicago Regional Council of Carpenters ("Union") based out of the Union office in Rock Falls, IL, and was appointed as a trustee of the Fund by the Union.

9. Defendant, David Foy, is an Business Agent of the Union, and an officer of Millwrights Local 2158, and is responsible for enforcing Union CBAs for Millwrights within the

2

Northern District of Illinois, Western Division, and was appointed as a trustee of the Fund by the Union.

10. Defendant, David Argubright, is a Business Agent of the Union and an officer of Carpenters Local 195 based in Ottawa, IL, and was appointed as a trustee of the Fund by the Union.

11. Defendant, Steven P. Tondi, is the President and CEO of the Association General Contractors of the Quad Cities based on Rock Island, IL, and was appointed as a trustee of the Fund by the Quad-City Builders Association pursuant to the Fund's Trust Agreement.

12. Defendant, Greg Mulherin was appointed as a trustee of the Fund by the Illowa Millwright Contractors Association pursuant to the Fund's Trust Agreement.

13. Defendant, Daniel F. Aussem, is the Executive Director of the Illinois Valley Contractors Association, and was appointed as a trustee of the Fund by the Illinois Valley Contractors Association pursuant to the Fund's Trust Agreement.

## Background Facts

14. The Fund receives contributions from employers and employees by way of CBAs negotiated by the Union with individual employers and Employer Associations.

15. The Employer Associations consist of the Illinois Valley Contractors Association, Illowa Millwright Contractors Association and the Quad-City Builders Association (herein after collectively referred to as "Employer Associations").

16. Members of the Employer Associations assign their rights to the Employer Associations to represent their interests in collective bargaining with the Union, and are primarily engaged in commercial construction at multiple jobsites throughout the jurisdiction of the Union.

17. The Union is divided into three regions: Central; Western; and Southern. Each of the regions have distinct locals whose jurisdiction are confined therein.

3

18. The Western Region of the Union encompasses Carpenters Locals 4, 166, 195, 790, 792 and 2158 (hereinafter collective referred to as "Western Region Locals"), which is essentially the northwestern portion of the State of Illinois and three counties in Iowa which border the Quad-Cities (Scott, Muscatine, and Lousia). Carpenters Local 2158 is considered the Millwrights' local for the entire Western Region.

19. The Locals in the Western Region make up the portion of the Union which comprises the former Heartland Regional Council of Carpenters, and comprises the geographic area of the Fund.

20. Members of the Union and the Locals in the Western Region can work for any employer that has a CBA with the Union, and once the member establishes initial eligibility with the Fund is entitled to participate in the Fund and receive benefits provided that the contributing employer is covered by a CBA that allows for contributions to the Fund.

21. The Board of Trustees of the Fund consist of six members divided equally between the Union and the Employer Associations.

22. CBAs that are negotiated by Employer Associations with the Union provide for contributions to be paid by the employer on a monthly basis for each hour worked by a covered employee.

23. At all times relevant to this complaint, the Fund provides employees working for various employers under CBAs negotiated by Employer Associations with eligibility for health insurance benefits based on $1,150.00 in "Required Contributions" being paid to the Fund the previous month worked. All amounts paid in excess of the $1,150 in any given month are "banked" and applied towards future eligibility should any subsequent month's contributions fall short of

the $1,150.00. The minimum contribution rate to achieve eligibly is commonly referred to as the "Composite Rate."

24. The $1,150.00 Required Contributions rate, or Composite Rate, has been set by the Trustees as part of their administration of the Fund and is a discretionary act.

25. The Fund's Plan Document defines eligibility as follows:

**Initial Eligibility**

You initially become eligible on the first day of a calendar month immediately following the month in which Posted Contributions in your Dollar Bank equal or exceed the Required Contribution amount. Posted Contributions are the Employer contributions made to the Fund on your behalf to your Dollar Bank that are posted on the last day of the month following the work month they were accrued. The amount required to receive a month of eligibility under the Regular Plan or Reduced Plan, called the Required Contribution amount, will be subtracted from the Dollar Bank on the first day of any month for which eligibility is granted. Any amount in a Dollar Bank that is attributable to Posted Contributions more than six months old for an Employee who is not yet eligible will be forfeited.

**Continued Eligibility**

Eligibility will continue for each month as long as you have at least the Required Contribution amount in your Dollar Bank on the last day of the proceeding month.

26. In the event that the Dollar Bank is short on the last day of the preceding month, the Plan allows for self-contributions of funds to create eligibility.

27. Eligibility will terminate if the Required Contribution amount is not present in the Dollar Bank at the end of the contribution month.

28. Prior to July 1, 2017, the Required Contribution amount charged for all participants that had hourly contributions paid on their behalf was as follows:

| Plan Year | Required Contribution |
|---|---|
| 2010 | $950 |
| 2011 | $975 |

5

| | |
|---|---|
| 2012 | $1,000 |
| 2013 | $1,050 |
| 2014 | $1,050 |
| 2015 | $1,075 |
| 2016 | $1,150 |

29. In January of 2017, the Trustees decided to change the Required Contribution for certain categories of participants based on the location of their employment effective July 1, 2017. Specifically, the Trustees carved out participants based on the location of their employment and created two Required Contribution amounts (composite rates); a "Shop" Required Contribution and a "Non-Shop" Required Contribution.

30. The Trustee claim that under the terms of the Plan and their rules and procedures, the Trustees are required to set the Required Contribution rates annually.

31. The Trustees created a Shop Required Contribution for participants that worked for the following employers: Raynor Garage Door, Carroll County, Onsite Woodwork Corporation, R & D Thiel, Inc., and City of Fulton Public Works (hereinafter collectively referred to as "Shop Employers"), and created a new Required Contribution amount for these participants of $1,666.00.

32. The Trustees created a separate Non-Shop Required Contribution amount for all other participants working for employers covered by CBAs negotiated by employer associations, which was identical to the previous uniform Required Contribution amount of $1,150.00.

33. The stated basis for this change in Required Contributions based on the location of the participant's employment was that the contributions paid by Shop Employers did not cover the benefits paid out to their employees and dependents, while the contributions paid by Non-Shop

Employers (covered by the Employer Association CBAs) covered benefits paid out to their employees and dependents.

34. In June of 2017, after receiving complaints, requests for information and requests for authority for the creation of two Required Contribution amounts, the Fund and Trustees created a new Shop Required Contribution amount of $1,350 claiming that it had conducted a further study.

35. In July of 2017, the Fund and Trustees again changed the Required Contribution amount and created three separate Required Contribution amounts: Raynor Garage Door employees $1,485; "Small Shop Employers" (Shop Employers other than Raynor Garage Door) $1,265; and Employer Association employers $1,150.

36. The changes made to the Required Contribution amounts took effect August 1, 2017 and would be applied to eligibility September 1, 2017 and after.

37. Despite having set four Required Contribution amounts for Raynor employees in 2017 based on their "annual review", the Trustee have threatened to set a higher Required Contribution amount within five months on or before January 1, 2018.

38. The Trust Agreement allows for the Trustees to adopt a "Plan of Benefits" which sets forth "eligibility requirements, type and duration of benefits that are to be provided equally and without discrimination to eligible employees and beneficiaries…"

39. The Trust Agreement provides that contribution rates are set pursuant to the rates negotiated by the Union, and that the Trust Agreement cannot be amended in any which would conflict with any collective bargaining agreement that set contributions to the Fund.

40. On March 4, 2017, the Union entered into a CBA with Raynor Garage Door ("Employer") which set the following contribution rates to be paid by the Employer and the Employees covered by the CBA to the Fund:

- Effective July 1, 2017, $7.80 per hour (Employer Only);
- Effective July 1, 2018, $8.40 per hour (Employer $8.10, Employee $0.30); and
- Effective July 1, 2019, $8.82 per hour (Employer $8.82, Employee $0.30).

41. The CBA provides that Employees would be charged a Required Contribution amount or composite rate of $1,150 a month for benefits consistent with the established composite rate that the Fund charges all employees that participate in the Fund.

42. The CBA further provides that the monthly rate of $1,150 can be adjusted by the Trustees of the Fund on an annual basis, provided that all employees covered by the Fund are charged the same amount.

43. The Trust Agreement provides that "All Contributions shall become effective pursuant to the terms of the Collective Bargaining Agreement(s)."

## FEDERAL RULE 23 ALLEGATIONS

44. Plaintiffs bring this Claim for Relief on behalf of themselves and a class of all those similarly situated, defined as follows:

"All individuals who are either participants or beneficiaries of the Heartland Healthcare Fund as the result of a collective bargaining agreement negotiated with the Chicago Regional Council of Carpenters and Raynor Garage Door, and were required by the Heartland Healthcare Fund to have amounts in excess of $1,150 paid into their benefit accounts in order to obtain eligibility for healthcare benefits."

45. Upon information and belief, there are at least 300 persons in the Class, such that joinder of all members is impracticable.

46. The named Plaintiffs will fairly and adequately represent and protect the interests of the Class of members. Plaintiffs have retained counsel with substantial experience in prosecuting complex ERISA litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class.

47. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

48. The factual and legal bases of Defendants' liability to Plaintiffs and to the other members of the Class are the same, resulting in injury to the named Plaintiffs and to all of the other members of the Class as a result of Defendants' breach of their fiduciary duty as defined under ERISA and for openly violating the terms of the Trust Agreement through arbitrary actions. Plaintiffs and the other Class members have all suffered harm and damages as a result of Defendants actions.

49. The questions of law and fact relevant to this action are common to the claims of the named Plaintiffs and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not limited to the following:

(a) Did Defendants violate the terms of the Trust Agreement by charging employees of Raynor Garage Door a higher Required Contribution amount to obtain benefits than employees of employers covered by the Employer Association;

(b) Did Defendant Trustee breach their fiduciary duties by charging employees of Raynor Garage Door a higher Required Contribution amount contrary to the Trust Agreement and or CBA in order to benefit Employer Association members and their employees to the detriment of Raynor Garage Door employees;

(c) Should Raynor Garage Door employees be charged the same Required Contribution amount as other employees under Employer Association CBAs; and

(d) Did the Fund misappropriate additional contribution amounts paid by Raynor Garage Door employees for the benefit of the Employer Association and covered employees.

### Count I Breach of Fiduciary Duty (All Defendants)

50. Plaintiffs reallege and incorporate the allegations in paragraphs 1-49 as if fully alleged herein.

51. The diversion of contributions from Plaintiffs to pay the benefits of employees of Employer Association member employees in lieu of increasing the amount of contributions payable for all employees covered by the Fund was a breach of fiduciary duty under the exclusive purpose of ERISA § 404(a)(1)(A).

52. Defendants knowingly participated in the fiduciary violation by their use and diversion of the contribution from Raynor Garage Door employees to the Fund, when they knew or should have known that the contribution amounts charged to Raynor Garage Door employees was wrongfully diverted to pay benefits to employees of Employer Association members and their beneficiaries.

53. As a result of Defendants' action, Plaintiffs and their beneficiaries have lost eligibility for benefits based on employer contributions, and are required to self-pay to make the new Required Contribution amount.

54. Pursuant to ERISA § 409(a) defendants are personally liable to Plaintiffs for the losses sustained as a result of the conduct hereinabove alleged.

## Count II Breach of Fiduciary Duty (All Defendants)

55. Plaintiffs reallege and incorporate the allegations in paragraphs 1-49 as if fully alleged herein.

56. Defendants violated their fiduciary duty to Plaintiffs with respect to their eligibility to participate in the Fund under ERISA § 404(a)(1)(B), by failing to exercise their fiduciary duties with care, skill, prudence and diligence under the circumstances then prevailing that a prudent person would use by:

(a) Allowing for Plaintiffs to be treated differently that other employees covered by the Fund;

(b) Diverting money from Plaintiffs to other employees to keep the Required Contribution amounts lower for employees of members of the Employer Associations;

(c) By failing to set Required Contribution amounts for all participants at a level sufficient rate to pay benefits and administrative expenses of the Fund; and

(d) By failing to enforce the Trust Agreement with respect to contribution rates set out in CBAs as well as the terms requiring the Fund and Trustees to treat all employees equally.

57. As a result of Defendants' action, Plaintiffs and their beneficiaries have lost eligibility for benefits based on employer contributions, and are required to self-pay to make the new Required Contribution amount.

58. Pursuant to ERISA § 409(a) defendants are personally liable to Plaintiffs for the losses sustained as a result of the conduct hereinabove alleged.

### Count III Unjust Enrichment (Employer Association Defendants)

59. Plaintiffs reallege and incorporate the allegations in paragraphs 1-49 as if fully alleged herein.

60. Defendants, STEVEN TONDI, GREG MULHERIN, and DANIEL F. AUSSEM, have been unjustly enriched to the extent of the monies diverted from contributions paid by Plaintiffs have been used to subsidize employees of the Employer Association members and pay their benefits.

WHEREFORE, Plaintiffs request that a final judgment be entered herein as follows:

1. Holding Defendants liable for damages sustained by reason of Defendants' breach of fiduciary duty;

2. Compelling Defendants to make restitution to the Plaintiffs and/or the Fund for any amounts diverted to employees of the Employer Association members;

3. Compelling Defendants to redress their breaches of fiduciary duty by setting the same Required Contribution amount for all employees covered by the Fund; and

4. Awarding Plaintiffs prejudgment interest, reasonable attorney fees pursuant to ERISA § 502 (g), the costs of this action and such other relief that this Court may deem just and proper.

DATED: August 14, 2017

        SANTOS A. RANGEL, and ANTHONY
        ROMANO, individually and on behalf of a
        class of those similarly situated,


        <u>s/ Raymond J. Sanguinetti</u>
        Raymond J. Sanguinetti
        Rathje & Woodward, LLC
        300 East Roosevelt Road, Suite 300
        Wheaton, IL 60187
        (630) 668-8500